Brian A. Vogel, SBN 167413
brian@bvogel.com
THE LAW OFFICES OF BRIAN A. VOGEL, P.C.
770 County Square Drive, Suite 104
Ventura, CA 93003
Phone: (805) 654-0400
Facsimile: (805) 654-0326
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MICHAEL WILLIAM MEHAS,
An invidual,

               Plaintiff

               -vs-

COUNTY OF VENTURA; VENTURA
COUNTY SHERIFF'S OFFICE;
VENTURA COUNTY SHERIFF
WILLIAM "BILL" AYUB;  OFFICER
CHRISTOPHER CADMAN; OFFICER
ETHAN BATTLE; OFFICER DANIEL
BLANCK; OFFICER MICHAEL
LEDESMA; AND DOES 1-10,
inclusive.

               Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

1. 42 U.S.C. § 1983 (4th and 14th Amendments - Excessive Use of Force) against Crone and Ferruzza
2. 42 U.S.C. § 1983 (4th and 14th Amendment - False Arrest and Detention, Abuse of Process and Malicious Prosecution) against Crone and Ferruzza
3. 42 U.S.C. § 1983 (Municipal Liability Claims) against County and VCSO
4. 42 U.S.C. § 1983 (Supervisory Liability Claim) against aYUB

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1

**COMPLAINT FOR DAMAGES**

1.      This is a complaint for money damages by Plaintiff, arising under 42 U.S.C. §§ 1983 and 1988.  Plaintiff seeks redress for deprivation of his rights, privileges and immunities, secured by the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for this action is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1343, as it arises under 42 U.S.C. §1983.

3.      The acts complained of arose in the Central District of California. Therefore, venue properly lies here pursuant to 28 U.S.C. § 1391. Venue in this Court is also proper pursuant to 28 U.S.C. §1391(b)(1) in that one or more Defendants resides in or has its principal place of business in the Central District of California.

## PARTIES

5.      Plaintiff, Michael William Mehas, ("MEHAS" or "Plaintiff"), at all times material herein, was an adult citizen residing in Ventura, Ventura County, California within the jurisdiction of the United States District Court, Central District of California.

6.      At all times material herein, Defendant COUNTY OF VENTURA, ("COUNTY") was, and is, a public entity authorized by law to establish certain

2

**COMPLAINT FOR DAMAGES**

departments, responsible for enforcing the laws and protecting the welfare of the citizens of the COUNTY of VENTURA. At all times mentioned herein, Defendant COUNTY was, and is, ultimately responsible for overseeing the operation, management, and supervision of the VENTURA COUNTY SHERIFF'S OFFICE ("VCSO"). Defendant COUNTY is liable for the negligent and reckless acts of Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, as well as other personnel employed at the VENTURA COUNTY SHERIFF'S OFFICE, as described herein.

7.     At all times mentioned herein, Defendant Ventura County Sheriff's Office ("VCSO") was a department of Defendant COUNTY responsible for overseeing the operation, management, and supervision of the VCMJ. At all relevant times, VCMJ was and is managed directly by Defendant VCSO. Defendant COUNTY was ultimately responsible for the management and supervision of the VCSO officers, including Defendant DOES.

8.     At all times material herein, Defendant VENTURA COUNTY SHERIFF WILLIAM "BILL" AYUB ("AYUB") was the SHERIFF of VCSO, and was responsible for supervising, operating, and managing VCSO employees and agents and was further responsible for making, forming and maintaining the policies,

**COMPLAINT FOR DAMAGES**

practices customs, and procedures used at VCSO by all VCSO employees and agents.  He is being sued in his individual capacity.

9.    At all times material herein, Defendant VCSO OFFICER CHRISTOPHER CADMAN, ("CADMAN") was, and is, a natural person, residing in the Central District of California and acting as a duly appointed patrol officer, under color of law, employed by Defendants COUNTY and VCSO which is located in the Central District of California.

10.    At all times material herein, Defendant  VCSO OFFICER ETHAN BATTLE, ("BATTLE") was, and is, a natural person, residing in the Central District of California and acting as a duly appointed patrol officer, under color of law, employed by Defendants COUNTY and VCSO which is located in the Central District of California.

11.    At all times material herein, Defendant VCSO OFFICER DANIEL BLANCK was, and is, a natural person, residing in the Central District of California and acting as a duly appointed patrol officer, under color of law, employed by Defendants COUNTY and VCSO which is located in the Central District of California.

12.    At all times material herein, Defendant VCSO OFFICER MICHAEL LEDESMA, ("LEDESMA") was, and is, a natural person, residing in the Central

4

**COMPLAINT FOR DAMAGES**

District of California and acting as a duly appointed patrol officer, under color of

law, employed by Defendants COUNTY and VCSO which is located in the Central

District of California.

13.     Upon information and belief, Defendants DOES 1-10 were each responsible

in some manner for the injuries and damages alleged herein. The true names and

identities of Defendants DOES 1-10 are presently unknown to Plaintiff.  At all

relevant times herein Defendants DOES 1-10 were employees and/or agents of

COUNTY and/or VCSO. Defendant DOES 1-10 include, *inter alia*, COUNTY

and/or VCSO officers or supervising employees and/or agents who were involved

in any manner in the incidents and legal claims for relief alleged in this Complaint.

Plaintiff will amend this Complaint to allege their true names and capacities when

they are ascertained.  Plaintiff is informed, believes, and based thereon alleges that

each Defendant DOE herein is in some manner responsible for the injuries and

damages suffered by Plaintiff.

## **GENERAL ALLEGATIONS**

14.     This action is brought under Title 42 U.S.C. §§1983, 1988, and the Fourth

and Fourteenth Amendments of the United States Constitution and pursuant to the

general laws of the United States.  Plaintiff alleges that he was unlawfully detained

without reasonable suspicion for an unduly prolonged period of time and that he

**COMPLAINT FOR DAMAGES**

was thereafter arrested without probable cause, forcibly handcuffed, and taken to jail. Defendants thereafter conspired to falsify evidence and wrote or reviewed police reports containing materially false descriptions of Plaintiff's actions in order to prosecute him for crimes which he did not commit and obstruct his access to justice.

15.    At all times relevant to the facts alleged herein Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, are responsible for the unlawful conduct and resulting injury because they personally participated in the conduct, acted jointly and in concert with others who did so, or authorized, acquiesced, or failed to take action to prevent the unlawful conduct.

16.    Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES are being sued in their individual capacities.  At the time of the acts complained, each individual defendant was a duly appointed VCSO officer employed as such by Defendant COUNTY.  At the time of the acts hereinafter complained of, each said defendant acted in the course and scope of such employment and acted under color of law.  Each individual defendant failed and refused, with deliberate indifference to Plaintiff, to intervene to stop the unlawful conduct, wrote materially false descriptions of the conduct, and otherwise ratified the conduct perpetrated by agents and officers of the VCSO.

**COMPLAINT FOR DAMAGES**

17.     At all material times, municipal Defendant COUNTY was at all times ultimately responsible for the hiring, training, supervision, and discipline of Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, and were responsible for violation of Plaintiff's rights.

18.     At all material times, each Defendant was individually and jointly engaged in tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

19.     At all times mentioned herein, each of the individual officer defendants was the agent and employee of Defendant COUNTY and, in doing the things herein mentioned, were acting within the scope of their authority as such agents and employees with the permission and consent of their Co-Defendants.

## FACTUAL ALLEGATIONS

20.     Plaintiff is informed and believes that each Defendant sued herein was responsible in some manner for the events as hereinafter described, and proximately caused injuries and damages to Plaintiff.

21.     At the time of his arrest on Saturday night, December 9, 2017, Plaintiff was a 58-year-old attorney with no criminal record.

22.     When police encountered him, he was walking down a street within a block from his house and was heading home after visiting with a neighbor.

**COMPLAINT FOR DAMAGES**

23.     Plaintiff lived in a hillside community in Ventura California which, only 5 days earlier, had been ravaged by one of the largest conflagrations in California history, the Thomas Fire.

24.     On the day before his arrest, December 8, 2017, the city of Ventura had been declared a national disaster by President Trump.

25.     More than 500 structures had been damaged or destroyed by the blaze in the city of Ventura including numerous homes in Plaintiff's neighborhood.

26.     The catastrophic fire resulted in tens of thousands of Venturans having to immediately evacuate their families and loved ones from their homes.  Many, like Plaintiff, suffered from shock and PTSD symptoms throughout the ordeal and afterwards.

27.     It was cold in Ventura on evening of December 9, 2017 with temperatures in the 50's.

28.     At approximately 9:00 p.m. that evening, Plaintiff left his house to check on two of his neighbors.  He was dressed warmly with a Patagonia jacket but was not wearing gloves so he used the warm pockets of jacket to keep his hands warm as he walked down the dark and smoky street towards his neighbors' houses.

29.     He could see some of the houses in the neighborhood that had burned down were still smoldering and there was smoke and ash in the air which coated almost

**COMPLAINT FOR DAMAGES**

everything.  Some of the houses that were still standing now had electricity with some lights on.  However, power had not yet been restored to the street lights so the street was still very dark.

30.    Plaintiff made it to his neighbor's house which had suffered a lot of damage in the fire.  They stood outside his garage and waved and gave thumb's ups to the emergency responders including police, firemen, and energy company technicians who were driving around performing their emergency duties.

31.    For several days after the fire, random people would come driving through the neighborhood innocently taking pictures and selfies, but there were also looters and scavengers who would show up to pick through houses that had been evacuated.

32.    Several of Plaintiff's neighbors stayed in the neighborhood and would walk down the street looking out for their neighbors' homes.

33.    During this time, Plaintiff did not walk outside with his ID on his person because he feared he could get robbed or assaulted by the looters or scavengers, who could then steal his ID and know where he lives.  Instead, he kept his ID in his car, which was parked in front of his house, less than block from where he was detained and arrested.

**COMPLAINT FOR DAMAGES**

34.     As a victim of the Thomas Fire and evacuation, Plaintiff was exhausted from lack of sleep and was under tremendous stress from cleanup and repair work which had to be performed without electricity.

35.     After departing his neighbor's house at approximately 9:30 p.m., Plaintiff walked around the bend west on Sunset Drive, where he could see several bright lights shining straight at him.  Plaintiff was close to the T intersection of Miramar Drive and Sunset Drive, where several houses had burned down on both sides of Sunset, approximately a block away from his house.  At night, Sunset Drive had been basically pitch black since the fire, so the bright lights really stood out.  It was obviously the police and he was glad for that.

36.     Plaintiff's house was several houses pas the lights so he walked directly towards them.   There were five incinerated houses followed by two still standing houses and then Lincoln Drive where Plaintiff lived.  Plaintiff was about a block away from home.

37.     As he walked up to the lights, VCSO Officer BATTLE shined his flashlight at him and ordered Plaintiff to stop.  His partner, VCSO Officer CADMAN then also shined his flashlight at Plaintiff and ordered him to stop.

38.     Plaintiff stopped but he did not understand why they were shining their lights directly in his eyes.

10

**COMPLAINT FOR DAMAGES**

39.     According to CADMAN's signed Declaration for an arrest warrant, he and his partner BATTLE were attempting to find owner of a truck that had been left running in the street when Plaintiff approached.  They had been patrolling the hillsides and suspected that the empty running vehicle might belong to a looter.

40.     CADMAN also averred that BATTLE ordered Plaintiff to take his hands out of his pockets and Plaintiff complied.

41.     CADMAN further averred that Plaintiff was not in possession of identification.

42.     This was true but CADMAN failed to include the fact Plaintiff verbally identified himself and told him that he had his ID in his car which was right up the street.

43.     CADMAN did note that Plaintiff told him he lived right up the street but did not tell him where he was coming from.

44.     After a few minutes, Plaintiff put his hands back in his pockets and CADMAN told him to remove them and Plaintiff complied.

45.     Plaintiff had no idea why he was being detained and did not know anything about the running white truck.

46.     CADMAN noted in his warrant declaration that he could smell a strong odor of marijuana.

11

**COMPLAINT FOR DAMAGES**

47.     According to the warrant declaration, Plaintiff then said something like "Who are you, you are just harassing me, go find the looters."

48.     Plaintiff told CADMAN that he had no idea who the white truck belonged to and that he was just walking home.

49.     The warrant declaration then avers that CADMAN attempted to explain to Plaintiff that the police did not know him and that he was found in the area of a running vehicle with no one else around.

50.     Plaintiff verbally identified himself and told CADMAN that he did not have his ID on him because did not want to carry it around because he might lose it or be assaulted by looters who would then know where lived.  He told CADMAN that his ID was in his car about a block away or right up the street.

51.     CADMAN noted in warrant declaration that Plaintiff again put his hands in his pockets, was ordered to remove them, which he did, and also removed *a set of keys,* (making it unlikely that the running vehicle which probably had the keys in it was his).

52.     Plaintiff had already told CADMAN that his ID was in car very close by and requested that they go get it so that he could be released.

53.     According to the warrant declaration, after Plaintiff again put his hands in his pockets and removed the keys, CADMAN decided to pat Plaintiff down for

**COMPLAINT FOR DAMAGES**

officer safety.  Plaintiff complied but continued to say that CADMAN was

harassing him, trying to intimidate him and that was not going to happen.

49.    Finally, CADMAN (falsely) averred in his declaration that Mehas continued

to yell "and would not allow me to explain how we could figure out who he was

and if he belonged in the area so CADMAN placed him under arrest for a violation

of Penal Code section 148.

50.    CADMAN's police report does add that after Plaintiff told him that he lived

"down there" , (i.e. nearby), he asked Plaintiff why he was walking out walking at

10:00pm in an evacuated with no identification, to which Plaintiff responded "well

fuck you."

51.    CADMAN's report fails to mention the fact before he arrested plaintiff, the

owner of the running vehicle in the street showed up, showed the police his ID and

was immediately released.  Plaintiff told CADMAN he did not like what was going

on, and that it was obvious Plaintiff had nothing to do with the white truck, that

he's not a scavenger or looter, that he's a resident, and he should be released

immediately.

52.    Two more VCSO deputies (BLANCK and LEDESMA) drove up during the

detention.  It was so dark Plaintiff could not see their faces through the flashlights.

He was now surrounded by four officers.

**COMPLAINT FOR DAMAGES**

53.     Plaintiff told the four deputies in no uncertain terms that he didn't like them surrounding him, yelling at him, and ordering him around.  Plaintiff asked for their names and badge numbers several times. Plaintiff wanted to know exactly with whom he was dealing in regards to all four deputies.

54.     Plaintiff had been traumatized by the Thomas Fire, evacuation, and surrounding devastation.  Plaintiff, an attorney and resident in the neighborhood, felt that his civil rights were being violated.

55.     Both times Deputy CADMAN ordered Plaintiff to take his hands out of his pockets, Plaintiff immediately complied.  Plaintiff cooperated with every single order made to him by the four (4) deputies.  Plaintiff was unarmed and never made any threats or threatening gestures other than absent mindedly putting his hands in his pockets to keep them warm.

56.     CADMAN then averred that Plaintiff again put his hands in his pockets, was ordered to remove them, which he did, and also removed a set of keys. (making it unlikely that the running vehicle which probably had the keys in it was Plaintiff's to begin with.  It is also worth noting that Plaintiff had already told CADMAN that his ID was in his car very close by and, obviously, he could have gone and retrieved the ID).

**COMPLAINT FOR DAMAGES**

57.    Plaintiff apologized to Deputy CADMAN, and explained this whole ordeal really shouldn't be about him putting his hands in his pockets because it is cold. This was about the fact that Plaintiff lives here, and the looters and scavengers are out there, and that's who Deputy CADMAN should be messing with.  Plaintiff pleaded with Deputy CADMAN to let him go, or get his wallet and ID to prove he lived right up there, and then let him go.  Plaintiff told him, there's no purpose in lecturing me about my hands in my pockets.  What good was this doing anybody? It was irrelevant to the situation.  Plaintiff was cold.

58.    CADMAN continued to lecture Plaintiff about following orders, and Plaintiff, absent-mindedly, stupidly from shock, exhaustion, and PTSD, without being able to form any intent whatsoever other than he wanted to go home, said, "fuck you", quit lecturing me and ordering me around.  Go get the scavengers and looters.

59.    That's when Deputy CADMAN angrily told Plaintiff he was "under arrest". That was why Deputy CADMAN arrested Plaintiff, end of story.  Plaintiff was then forcibly handcuffed by one of the other three deputies.

60.    Finally, CADMAN (falsely) averred in his declaration that Mehas continued to yell "and would not allow me to explain how we could figure out who he was

**COMPLAINT FOR DAMAGES**

and if he belonged in the area so he placed him under arrest for a violation of Penal Code section 148.

61.    Even after:  a) Plaintiff verbally identified himself, b) the police confirmed that he did indeed live very close by, and c)  a Ventura Police Officer came by who had previously ID'd Plaintiff, and told CADMAN as much, they handcuffed and arrested him anyway.

### FIRST CLAIM FOR RELIEF

**Violation of Civil Rights: Excessive Use of Force**

**(42 U.S.C. § 1983/4th and 14th Amendments)**

**Against Defendants  Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES**

62.    The preceding Paragraphs are incorporated by reference as though fully set forth herein.

63.    This action arises under 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and common law principles.  By engaging in the conduct described hereinabove, Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES were acting or pretending to act, under the color of state law as law enforcement officers and agents employed by Defendants COUNTY and VCSO, and violated Plaintiff 's civil rights afforded to him under the United States Constitution,

16

---

**COMPLAINT FOR DAMAGES**

including privileges and immunities secured to Plaintiff by the Constitution of the United States, namely, Plaintiff 's right to be free from unreasonable search and seizure in violation of his rights protected under the Fourth Amendment.

64.    As a direct and proximate result of Defendants' wrongful conduct described hereinabove, Plaintiff suffered significant psychological injuries and emotional distress.  Plaintiff further suffered financial injuries, including but not limited to, payments for medical or psychological treatment and attorneys' fees.

65.    Plaintiff has suffered special and general damages in an amount to be proven at trial. These injuries and damages are ongoing.

66.    In engaging in the conduct alleged herein,  Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES acted with the intent to injure, vex, annoy and harass Plaintiff , and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff 's rights with the intention of causing Plaintiff injury and depriving him of his constitutional rights.

67.    As a result of the foregoing, Plaintiff N seeks exemplary and punitive damages against Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES.

69.    Further, as a result of the foregoing, Plaintiff seeks an award of reasonable attorneys' fees and costs according to proof, pursuant to 42 U.S.C. §1988.

17

**COMPLAINT FOR DAMAGES**

## SECOND CLAIM FOR RELIEF

**Violation of Civil Rights: False Arrest and Detention, Abuse of Process**

**and Malicious Prosecution**

**(42 U.S.C. § 1983/4th and 14th Amendment)**

**Against  Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES**

70.    The preceding Paragraphs are incorporated by reference as though fully set forth herein.

71.    This action arises under 42 U.S.C. §§ 1983 and 1988, the United States Constitution and common law principles.  By engaging in the conduct described hereinabove, Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, were acting or pretending to act, under the color of law as law enforcement officers employed by Defendants COUNTY and VCSO, and violated Plaintiff's civil rights afforded to him under the United States Constitution, including privileges and immunities secured to Plaintiff  by the Constitution of the United States, namely, Plaintiff 's right to be free from abuse of process as protected by the Fourth Amendment, including false arrest and detention, malicious prosecution as protected by the Fourth Amendment, and from falsification of evidence of the crimes of resisting arrest by force and battery on a police officer, and thereafter, prosecution of Plaintiff based upon the falsified evidence.

18

**COMPLAINT FOR DAMAGES**

72.     Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES violated Plaintiff's civil rights protected under the Fourth and Fourteenth Amendments by maliciously using the legal process for an ulterior wrongful purpose for which it was not designed or intended. Specifically, Defendants (1) arrested and detained Plaintiff on the false charges of violations of Penal Code § 148; (2) created false reports and statements regarding Plaintiff and the incident in order to cover-up their wrongdoing which were later relied by the Ventura County District Attorney to file misdemeanor charges against Plaintiff for violations of Penal Code § 148 - resisting an executive officer.

73.     As a direct and proximate result of Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES' wrongful conduct described hereinabove, Plaintiff suffered emotional and financial damages, specifically including, but not limited to, emotional distress and having to retain and pay for an attorney to defend him against the misdemeanor charges filed by the District Attorney.

74.     Plaintiff  has suffered special and general damages in an amount to be proven at trial. These injuries and damages are ongoing.

75.     Plaintiff is informed, believes and based thereon alleges that, in engaging in the conduct alleged herein,  Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES acted with the intent to injure, vex, annoy and harass

**COMPLAINT FOR DAMAGES**

Plaintiff , and subjected Plaintiff to cruel and unjust hardship in conscious

disregard of Plaintiff 's rights with the intention on the part of the Defendants of

thereby depriving Plaintiff of his liberty and legal rights and otherwise causing

Plaintiff's injury.

76.     As a result of the foregoing, Plaintiff seeks exemplary and punitive damages

against Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES.

77.     Further, as a result of the foregoing, Plaintiff seeks an award of reasonable

attorneys' fees and costs according to proof, pursuant to 42 U.S.C. §1988.

### THIRD CLAIM FOR RELIEF

**42 U.S.C. § 1983 Claims (Municipal Liability Claims -**

**Deliberate Indifference and Failure to Supervise, Train and Hire)**

**Against Defendants COUNTY, VCSO, and DOES**

78.     The preceding Paragraphs are incorporated by reference as though fully set

forth herein.

79.     Plaintiff brings this cause of action under 42 U.S.C. § 1983, as against

Defendants COUNTY, VCSO, AYUB and DOES.

80.     The individual defendant officers' violations of Plaintiff 's Fourth and

Fourteenth Amendment rights to be free from excessive use of force, unlawful

seizure and deprivation of liberty and false arrest, as set forth herein, were the

**COMPLAINT FOR DAMAGES**

direct and proximate results of Defendants COUNTY, VCSO, AYUB and DOES's maintaining longstanding customs, policies, practices and/or procedures which tolerate and condone Defendant officers' violations, set forth hereinbelow.

81.     These longstanding customs, policies, practices and/or procedures, include, but are not limited to, Defendants COUNTY, VCSO, AYUB and DOES's standard operating procedures as well as accepted practices.

82.     Said customs, policies, practices and/or procedures include, *inter alia*: an ongoing pattern of condoning and having a deliberate indifference towards citizens' constitutional rights in connection with the following acts committed by VCSO officers: (1) the use of excessive force or violence in a reckless and unreasonable manner; (2) unconstitutional seizures and deprivations of liberty; (3) the conforming of false testimony, evidence or reports by all officers involved in an incident to protect one or more of them from criminal prosecution or administrative discipline and/or to allow for malicious prosecution; (4) the performance of sham or deficient investigations of allegations of deputy misconduct designed to allow officers' misconduct to escape detection by superiors and/or superiors who guide or shape the investigation to support a result exonerating the involved officers; (5) the planting of evidence or withholding evidence to favor the involved officers' version of a disputed and complained of

**COMPLAINT FOR DAMAGES**

incident of police misconduct; (6) the ratification of misconduct to avoid referral for criminal prosecution, and (7) the public denial or minimization of rampant problems of dishonesty and brutality within VCSO.

83.     The policy-makers for the officers of Defendant VCSO at the time of the incident were Defendant AYUB and DOES.  As such, they had the duty to make and maintain customs, policies, practices and/or procedures which address and cure the problems of use of excessive force and other civil rights violations committed by VCSO officers in general.  Rather than creating or maintaining such customs, policies, practices and/or procedures, Defendant AYUB and DOES created and maintained policies and practices which caused a deliberate indifference toward Plaintiff 's constitutional rights as well as citizens' constitutional rights in general and caused harm to Plaintiff by condoning officer commissions of violations including excessive use of force, unreasonable seizure and the deprivation of liberty.

84.     The above described customs, policies, practices and/or procedures demonstrate a deliberate indifference on the part of the policy-makers of Defendants COUNTY and VCSO to the constitutional rights of persons within COUNTY and were a moving force behind the violations of  Plaintiff 's rights alleged herein.

**COMPLAINT FOR DAMAGES**

85.     Plaintiff is informed, believes and based thereon alleges that Defendants COUNTY, VCSO, AYUB and DOES knew, or in the exercise of reasonable care should have known prior to February 4, 2015, that VCSO officers, including Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, were engaging in the conduct described hereinabove.

86.     Plaintiff is informed, believes and based thereon alleges that Defendants COUNTY, VCSO, AYUB and DOES knew, or in the exercise of reasonable care should have known prior to February 4, 2015, that VCSO officers, including Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, had a history, propensity, pattern and practice of adhering to the unlawful and unconstitutional police actions described herein and above.

87.     Notwithstanding this information and the history of VCSO officers including Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, Plaintiff is informed, believes and based thereon alleges that Defendants COUNTY, VCSO, AYUB and DOES failed to properly screen applicants and hired persons who were psychologically unfit for duty, used unreasonable police tactics which lead to the constitutional violations of Plaintiff 's constitutional rights as alleged herein and above.

**COMPLAINT FOR DAMAGES**

88.   Plaintiff is informed, believes and based thereon alleges that Defendants COUNTY, VCSO, AYUB and DOES generally failed to train and supervise VCSO officers, including Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES, in order to halt and prevent the type of conduct which resulted in violating Plaintiff's constitutional rights.

89.   Plaintiff is informed, believes and based thereon alleges that Defendants COUNTY, VCSO, AYUB and DOES has customs, policies or practices which reject and ignore misconduct of VCSO officers and fail to impose discipline.  As a result, the custom, practice or policy results in the retention of officers such as Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES who have a propensity to cause constitutional violations such as use of excessive force, unreasonable seizure, liberty deprivations and falsification of evidence.  This failure to discipline condones, ratifies, promotes and perpetuates VCSO officers' misconduct and their "code of silence" and was a moving force behind the violations of Plaintiff 's constitutional rights.

90.   Plaintiff is informed, believes and based thereon alleges that Defendants COUNTY, VCSO, AYUB and DOES expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, and knew that such

24

**COMPLAINT FOR DAMAGES**

conduct was unjustified and would result in violations of Plaintiff constitutional rights.

91.     As a result of the foregoing, Plaintiff was subjected to physical and emotional injuries that were a direct and proximate result of Defendants COUNTY, VCSO, AYUB and DOES's failure to maintain customs, policies, practices or procedures designed to protect the constitutional rights of the public.

92.     Defendants COUNTY, VCSO, AYUB and DOES expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions of the Defendant officers alleged herein, and knew that such conduct was unjustified and would result in violations of Plaintiff 's constitutional rights.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Supervisory Liability)

### Against Defendant AYUB and DOES

93.     The preceding Paragraphs are incorporated by reference as though fully set forth herein.

94.     This Count arises under 42 U.S.C. § 1983, and is brought against Defendants AYUB and DOES as individuals.

95.     A supervisor may be individually liable if there exists a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

**COMPLAINT FOR DAMAGES**

violation. Supervisory liability exists even without overt personal participation in the offensive act, if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

96.     On information and belief, Defendant AYUB and DOES are responsible for making and maintaining the policies and practices of the Defendant VCSO. Defendant AYUB is responsible for ensuring that independent investigative and review procedures are in place and that measures are taken to investigate the statements and reports of VCSO officers and to ensure that false statements are discovered and that their authors are disciplined and retrained.  Defendant AYUB is also responsible for ensuring that policies and procedures are in place for independent review of the circumstances of force used by VCSO officers and ensuring that when officers use excessive force that they are disciplined and retrained.

97.     On information and belief, Defendant AYUB is aware that the current policy and procedure for independently reviewing officers' statements and reports concerning arrests and the use of force is that there is no policy or procedure for independent review or sufficient investigation of the claims made by officers following an incident of excessive use of force. On information and belief,

**COMPLAINT FOR DAMAGES**

Defendant AYUB has taken no measures to implement any form of independent review or sufficient investigatory procedure. On information and belief, Defendant AYUB maintains a policy and practice of ratifying claims made by officers after an incident without any independent review or other sufficient investigatory measure. On information and belief, Defendant AYUB maintains a policy and practice within the VCSO of "rubber stamping" officers' versions of events, such that officers rely on the practice and custom that false statements will neither be investigated or unearthed.

98.    On or before February 4, 2015, and for some time prior thereto and since that time, Defendant AYUB and DOES have either participated in, or known of, or should have known of, their subordinates excessive use of force, witness intimidation, suppression of evidence, falsification of evidence, and noncompliance with VCSO's policy as to use of force and investigations of use of force incidents.

99.    On information and belief, Defendant AYUB and DOES are aware of numerous citizen complaints and lawsuits filed alleging excessive force by VCSO officers and Defendant AYUB and DOES have taken no measures to implement any policy or procedure to ensure that said complaints are adequately and independently investigates or that officers who engage in the use of excessive force

**COMPLAINT FOR DAMAGES**

are disciplined or retrained. The policies, customs and practices created and maintained by Defendant AYUB and DOES are relied on by VCSO officers, who believe that they are permitted to use excessive force with impunity.

100.   By failing to implement any of the aforementioned policies, by maintaining a culture of impunity for excessive force and by rubber stamping reports containing false statements, Defendant AYUB and DOES were the moving force behind the conduct of Defendants CADMAN, BATTLE, BLANCK, LEDESMA and DOES , when they unlawfully arrested Plaintiff and conspired to commit these violations against him because said Defendants believed that such conduct was and is permissible in the VCSO.

101.   In engaging in the conduct alleged herein, Defendants AYUB and DOES acted with the intent to injure, vex, annoy and harass Plaintiff, and subjected him to cruel and unjust hardship in conscious disregard of his rights with the intention of causing Plaintiff injury and depriving him of his constitutional rights.

102.   Plaintiff seeks compensatory damages, including emotional distress, punitive damages, attorney fees and costs.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, on each and every cause of action as follows:

**COMPLAINT FOR DAMAGES**

1.      For general damages according to proof at trial;

2.      For special damages according to proof at trial;

3.      For an award of punitive damages against the Defendants Defendants

CADMAN, BATTLE, BLANCK, LEDESMA and DOES

4.      For declaratory and injunctive relief;

5.      For attorney's fees and costs under 42 U.S.C. § 1988, C.C.P. § 1021.5, or

under any other applicable statutes or law;

6.      For an award of Plaintiff's costs of suit incurred herein;

7.      For an award of any applicable statutory penalties;

8.      For an award of any applicable interest amounts; and

9.      For any other relief the Court deems appropriate.

        Respectfully submitted,

Dated: December 6, 2019          LAW OFFICES OF BRIAN A. VOGEL, PC


                                 By:_____/s/_____
                                 BRIAN A. VOGEL
                                 Attorney for Plaintiff MICHAEL MEHAS

/ / /

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: December 6, 2019 LAW OFFICES OF BRIAN A. VOGEL, PC


By:_____/s/_____
BRIAN A. VOGEL
Attorney for Plaintiff MICHAEL MEHAS

**COMPLAINT FOR DAMAGES**